UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| DERRIK JARRAD McNAIR, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 09 C 1142 |
| MERRIONETTE PARK POLICE DEPARTMENT, THOMAS BROWN, and JOHN BRUCE, | ) | Judge Rebecca R. Pallmeyer |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Derrik Jarrad McNair brings this *pro se* complaint pursuant to 42 U.S.C. § 1983, alleging that Defendants Thomas Brown and John Bruce, two police officers with the Merrionette Park Police Department, arrested him without probable cause. Defendants have filed a motion for summary judgment, and Plaintiff has filed 20 pages of documents, which were docketed as "Exhibits," in response to the motion. For the following reasons, Defendants' motion for summary judgment is granted.

I.  **Summary Judgment Standard**

The standard for review of a summary judgment motion is well-recognized. The court will grant summary judgment when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). In reviewing the record, the court will consider the evidence, and draw reasonable inferences from it, in the light most favorable to the nonmovant, *Miller v. Am. Family Mut. Ins.*, 203 F.3d 997, 1003 (7th Cir. 2000), but a party cannot defeat summary judgment by relying on unsubstantiated facts or by resting on its pleadings. *See Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Greer v. Bd. of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001). Instead, the party who bears the burden of proof on an issue must affirmatively demonstrate that there is a genuine issue of material fact

for which a trial is required.  *Hemsworth*, 476 F.3d at 490.

Our court has adopted rules for presentation of record materials in support of and in opposition to summary judgment.  Local Rule 56.1(a)(3) directs the party seeking summary judgment to provide "a statement of material facts as to which the moving party contends there is no genuine issue . . . ."  *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the nonmoving party to admit or deny every factual statement proffered by the moving party and to identify, with evidentiary citations, any material facts that establish a genuine dispute for trial.  *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005).  When a litigant fails to respond to a Local Rule 56.1 statement, the court assumes the uncontroverted statement is true.  *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006).  The Seventh Circuit has endorsed strict enforcement of these requirements, holding that the court is not required to "'scour the record in search of evidence to defeat a motion for summary judgment.'"  *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 n.4 (7th Cir. 2002) (quoting *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001)).

Defendants have explained these rules to Plaintiff by way of the "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" called for in *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992), and *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982).  Despite this notice, Plaintiff has not filed a response in numbered paragraphs, instead submitting 20 pages of documents without any separate statement of facts.  Defendants have moved to strike Plaintiff's response but, in the interest of deciding the case on its merits, the court denies the motion and construes the facts and the exhibits Plaintiff has submitted in the light most favorable to him, recognizing that any statement in Defendant's Rule 56.1 submission that is not properly challenged is deemed admitted.

**II.     Facts**

The following are drawn from Defendants' L.R. 56.1(a)(3) Statement of Material Facts (hereinafter, "Defs.' 56.1").  Johnnie Watters is a 16-year-old employee of Dominick's Finer Foods

at 115th and Kedzie, where he works as a bagger and assists with store security. (Defs.' 56.1 ¶¶ 1-2.) Mr. Watters was working the afternoon shift on July 7, 2008, when he observed a "young man, black, doing some shoplifting" and saw the man place some items inside his pants. (Id. ¶¶ 4-7.) The man Mr. Watters was watching ran out of the store and got into his truck, with Mr. Watters right behind him. (*Id.* ¶¶ 10-11.) Mr. Watters saw a police car in the parking lot and reported to the police officer that the man in the truck had just stolen items from the store. (*Id.* ¶¶ 12-13.)

Mr. Watters testified that as he stood outside the store, he observed the man make a left turn from the parking lot, despite a posted sign prohibiting left turns. (*Id.* ¶¶ 15-17.) He also saw the police officer drive up behind the truck, put his lights on, and stop the truck. (*Id.* ¶ 14.) A second police officer arrived at the scene and, as Mr. Watters looked on, the man in the truck stepped outside and stood with one of the police officers while the second officer searched the vehicle. Suddenly, the man pushed the police officer and fled on foot, with the police officers giving chase. (*Id.* ¶¶ 18-21.) Mr. Watters was able to identify the man he saw shoplifting in a photograph from the Illinois Department of Corrections printout for Plaintiff McNair. (*Id.* ¶ 9.)

At his own deposition in this case, Plaintiff McNair admitted that he went to Dominick's Finer Foods at 115th and Kedzie on July 7, 2008, and that he spoke with a black male (Mr. Watters). (*Id.* ¶¶ 22-24.) He testified, further, that he exited the parking lot from the far west end onto 115th Street. Before exiting the lot, Plaintiff looked in his rearview mirror and saw a police vehicle with its emergency lights flashing. (*Id.* ¶¶ 25-26.) Plaintiff admits that the police car pulled up behind him and that the police officer exited his vehicle and questioned him about what had happened at Dominick's. (*Id.* ¶¶ 27-28.) Plaintiff confirmed Mr. Watters's account that a second officer arrived and that the officers asked him to step out of his vehicle; he testified that they then engaged in a conversation relating to his vehicle and its license plates. Plaintiff admits that he panicked and ran from the officers. (*Id.* ¶¶ 29-32.) He also conceded that, had a Dominick's employee reported that an individual matching Plaintiff's description was observed shoplifting, that report would have given

3

the police officers probable cause to pull him over. He admitted, further, that he was told that someone from the store had stopped the police car and pointed toward him. (*Id.* ¶¶ 33-34.)

Defendant Officer Thomas Brown was on patrol in the Dominick's parking lot on July 7, 2008, when an employee came out of the store, advised him that a suspicious person was leaving the store, and pointed out a vehicle about to exit the parking lot. (*Id.* ¶¶ 35-37.) Defendant Brown pulled up behind the vehicle as it was making a left turn from the parking lot, where a "right turn only" sign is posted. Defendant Brown activated his emergency lights and stopped the vehicle. (*Id.* ¶¶ 38-40.) As reflected in his police report, Defendant Brown concluded he had probable cause to stop the vehicle for two reasons: (1) the Dominick's employee pointed it out to him as possibly being involved in a crime and (2) the driver of vehicle made a left turn in violation of the posted sign prohibiting such a turn. (*Id.* ¶ 41.)

### III.    Analysis

The Fourth Amendment "right of the people to be secure in their persons . . . against unreasonable searches and seizures" generally requires a law enforcement officer to have probable cause for a search and seizure. The police have probable cause to forcibly detain an individual when "the facts and circumstances known to a reasonable arresting officer would support the belief that the suspect has committed or is committing a crime." *Driebel v. City of Milwaukee*, 298 F.3d 622, 643 (7th Cir. 2002), *citing Marshall v. Teske*, 284 F.3d 765, 770 (7th Cir. 2002); *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000). Probable cause is not evaluated "from the perspective of the omniscient observer, but on facts as they would have appeared to a reasonable person in the position of the arresting officer." *Marshall*, 284 F.3d at 770, *citing Mahoney v. Kesery*, 976 F.2d 1054, 1057 (7th Cir. 1992). To support a finding of probable cause, the officer is only required to demonstrate "'a probability or substantial chance of criminal activity . . . .'" *Smith v. Lamz*, 321 F.3d 680, 685 (7th Cir. 2003), *quoting United States v. Gilbert*, 45 F.3d 1163, 1166 (7th Cir. 1995). If an arrest is supported by probable cause, there is no constitutional violation "merely

because the complaint later turns out to be unfounded." *McKinney v. George*, 726 F.2d 1183, 1187 (7th Cir. 1984); *see also Delgadillo v. Paulnitsky*, No. 05 C 3448, 2007 WL 1655252, *6 (N.D. Ill. June 1, 2007) (Keys, J.).

In the instant case, Plaintiff has offered nothing that rebuts the testimony of Mr. Watters, a Dominick's employee, that he reported to Defendant Brown that Plaintiff had possibly been involved in criminal activity. (Defs.' 56.1 ¶¶ 12, 36.) Defendant Brown saw the individual identified by Mr. Watters about to exit the parking lot. (*Id.* ¶ 37.) And, as Defendant Brown approached Plaintiff's vehicle, he observed Plaintiff making a prohibited left turn. (*Id.* ¶ 38-39.) This traffic violation provided yet another basis for probable cause to stop Plaintiff's vehicle. (*Id.* ¶ 41.) In short, the evidence submitted by Defendants establishes that Defendants Brown and Bruce had probable cause to stop Plaintiff based on the information from Mr. Watters and Defendant Brown's own observation of Plaintiff making an illegal left turn.

The four documents Plaintiff has submitted in response to Defendants' motion for summary judgment do not alter this conclusion. First, Plaintiff has proffered a one-page document that appears to be drawn from the Merrionette Park Police Department report relating to the incident. The document essentially states that Mr. Watters advised the reporting officer ("R/O") of a suspicious person who was leaving the store and pointed out a silver Dodge exiting the parking lot. The R/O pulled up behind the vehicle just as it made a left turn out of the parking lot, removed Plaintiff from the vehicle, conducted a search, and ran a license check. Nothing was recovered belonging to Dominick's.

The issue in this case, however, is whether Officer Brown had probable cause to stop Plaintiff–not whether evidence of a crime was actually recovered. To support a finding of probable cause, the officer is only required to demonstrate the probability or substantial chance of criminal activity. *Smith*, 321 F.3d at 685. If supported by probable cause, an arrest does not amount to a violation of a constitutional right merely because it later turns out that the complaint was

unfounded. *McKinney*, 726 F.2d at 1187.

Plaintiff emphasizes the discrepancy between Watters's testimony describing Plaintiff's vehicle as a burgundy Ford Expedition and the police report, which identified the vehicle as a silver Dodge. Plaintiff contends that Defendant Brown disregarded the description of a burgundy Ford Expedition and instead pulled over the next young black man he saw and made a racist remark: "We don't like nigger thieves in Merrionette Park." (McNair Dep. 17:12-13, Ex. C to Defs.' 56.1.) The court concludes that this discrepancy is not sufficient to create a dispute of fact precluding summary judgment. When shown a photograph of Plaintiff (IDOC Photo, Ex. B to Defs.' 56.1) from the Illinois Department of Corrections website, Mr. Watters positively identified the photo as the "young man that I was trying to stop before he left out of the store." (Watters Dep. 11:16-17, Ex. A to Defs.' 56.1.) Mr. Watters also saw the man depicted in the photograph make a left turn from the parking lot and step out of the vehicle after the police pulled him over. (*Id.* at 14-15.)

Nor is the court concerned by the evidence that no items belonging to Dominick's were recovered in the search of Plaintiff's car, or that the three tickets issued to Plaintiff--charging him with driving without a valid driver's license; with operation of an uninsured motor vehicle; and with disobeying a "right turn only" sign–were all later voided. The fact that no items from Dominick's were found in Plaintiff's vehicle may mean that Mr. Watters was mistaken; but it does not rebut the evidence that Mr. Watters in fact identified Plaintiff. Defendant Brown pulled over the vehicle that Mr. Watters pointed out to him, and Mr. Watters verified in his deposition that Defendant Brown did in fact stop the vehicle being driven by the man he had identified. Whether the vehicle was burgundy or silver is of no consequence based on Mr. Watters's positive identification, as well as Defendant Brown's own observation of a traffic violation. And, as explained earlier, the fact that the traffic tickets were later voided has no bearing on whether Defendant Brown had probable cause at the time they were issued.

Plaintiff believes this incident was a product of racial profiling. Defendants did not address

this assertion, but the court does so briefly. "Racial profiling is generally understood to mean the improper use of race as a basis for taking law enforcement action." *Chavez v. Illinois State Police*, 251 F.3d 612, 620 (2001). As described above, however, the police had probable cause to stop Plaintiff in this case based on the report from a third party (Mr. Watters) and Plaintiff's traffic violation. Plaintiff has presented nothing other than his own speculation that Defendant Brown "pulled over the next young black he seen" (Plaintiff's Exhibits, Docket No. 54), and that speculation is contradicted by Mr. Watters's sworn statement that Defendant Brown stopped the man he had specifically identified. As for Defendant Brown's alleged racial comment: assuming it was made, such a statement was improper and unprofessional, but "such comments do not by themselves violate the Constitution." *Chavez*, 251 F.3d at 646, *citing Sherwin Manor Nursing Ctr., Inc. v. McAuliffe*, 37 F.3d 1216, 1221 (7th Cir. 1994); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1259 (7th Cir. 1984).

## CONCLUSION

Defendants' motion to strike Plaintiff's response to motion for summary judgment [57] is denied. Their motion for summary judgment [41] is granted. This case is dismissed.

ENTER:

Dated: September 22, 2010

_____
REBECCA R. PALLMEYER
United States District Judge